Roane J.
In this case, there is no evidence that *179 ■the bond was made a joint bond by fraud or mistake, or if í'iiy such did exist, that Minge was privy to the same» The chance of surviv- rabip was equal, and Minge ivas willing to submit to the legal consequences of such a bond. There may possibly exist reasons with an obligor for preferring a joint, to a joint and several bond, and it is impossible for this (jourt to decide whether such reasons did, or did not prevail with Minge. The law is laid down in the case of Towers v. Moor, 2 Vern. 99, that in a joint bond, the duty survives against the surviving obligor. The case of Simpson v. Vaughan goes expressly upon the lending being to both of the obligors. Amoral obligation therefore was imposed upon both, by the contract, to pay the debt, and if by the form in which the bond was drawn, the remedy was gone at Law, the Court thought it equitable to relate back to the moral obligation, which was equally strong on both of the obligors. But in this case, the surety was under no moral obligation, not having been a borrower of the money; and was only bound by the bond itself; no antecedent contract therefore subsisted between him and Field, whereon to found an equity for the extraordinary interposition of the Court of Chancery. The case of Bishop v. Church also goes upon the lending being to both of the obligors. I will not say that there may not be circumstances which would subject even a surety to the relief now’ sought for, but I am clear that the present case is totally destitute of them, and therefore I am of opinion that the decree is erroneous.
Fleming I. — In the cases of Simpson v. Vaughan, and Bishop v. Church, the obligors were partners in the busines ; both had the benefit of the money lent, and the survivor became bankrupt. A stronger case could not have occurred to warrant the equitable relief granted by the Court. In the latter case, the Chancellor postponed a decision of the cause, that inquiry-might be made into the neglect suggested against the obligee, and it is highly probable that, if it had been proved, he would have dismissed the bill. In this *180 case, Field, if he could upon any ground have been entitled to the relief he now asks for, would come into a Court of Equity with a very bad grace, after lying by so long as he has done, until Claiborne, the principal, has been reduced in his circumstances, and, as the answer suggests, is now unable to pay. Upon the whole, I am of opinion, that Minge was a mere surety, not bound at all in conscience ; and his executor being exonerated at Law, ought not to be charged in Equity.
The President. — The case of Action v. Peirce in principle has no application to the present. A husband upon his marriage agreed to leave his wife 1000/, if she survived him; a bond for this purpose was dr aun by an unskilful hand, and was made payable to the wife, with condition to leave her the 1000/, In that case, the husband was by his agreement, and for a consideration . deemed valuable in law, a debtor to the wife, and under a moral obligation to pay. Though the remedy was gone at law by the intermarriage, and that, in consequence of the unskilfulness of the drafts-man, yet the husband’s conscience was bound, and therefore the Court very properly considered him as a trustee for the wife. The principle contended for by Mr. Stark, that a loan creates a moral obligation to pay, which being a duty antecedent to, and independent of the bond, cannot be discharged by the loss of the bond, or by other accident, is true, as to the borrower, and the cases of Simpson v. Vaughan, and Bishop v. Church are decided upon this ground only.
The Chancellor, indeed, in Simpson v. Vaughan, is made to say, that no stress was laid upon the circumstance of the obligors being partners. But this is certainly a mistake of the reporter, for in the case of Bishop v. Church, the counsel, speaking of Simpson v. Vaughan, says, “ the consideration your lordship went upon, was, that it was a sum lent to both, of which both had the advantage, and a debt arose against both from the nature of the transaction»” In *181 tills assertion he is not contradicted by the Chancellor, which would seem to prove that the lending and rowing was the ground upon which the decision in that case was bottomed. The principle thee of these cases has no application to the present. The surety received no benefit from the loan ; he was bound by-no contract express or implied, antecedent to the bond; he was under no moral obligation to pay, and of course Equity would not bind him farther than he was bound at Law.
It is a maxim, that where Equity is equal, he shall prevail who has the Law in his favour; and the cases cited in Francis’ Maxims of Equity, p. 71, as an illustration of the principle, are very strong indeed, to shew that a surety has equal equity with the obligee, and being discharged at Law, Equity will not charge, him.
It is true a Court of Equity will set up a lost bone! against a surety; — but the reason is, that the surety is not discharged by the loss of the bond, and the Court only relieves against the accident, by setting op the evidence of. the debt.
It was argued that it did not appear that Jlinge was a surety. This is a fact not to be disputed, since the bill itself so states it. Bonds are sometimes so drawn that it is impossible to distinguish the surety from the real debtor; but when distinguished by proof, the uncertainty arising from the face of the instrument can make no difference in the principle. Since the Act of Assembly which gives to sureties a summary remedy against their principals, it might be well to distinguish in the bond, the one from the other.
It was contended that the demurrer admitted the truth of the allegations in the bill. It is true that a demurrer, without an answer, does admit the facts charged on the other side; but if the defendant also answers, and denies the allegations of the bill, as the defendant has done in this case, it cannot be said that they are acknowledged. When the demurrer was overruled, general commissions for taking depositions were awarded, of which the plaintiff might have avail *182 ed himself, if he had wished to establish any facts important to his cause. But instead of this, he appears to have consented to bring on the cause for a hearing without testimony, and therefore there is no ground for giving him an opportunity now of taking depositions.
The opinion of the Court is, “ that the testator • David Minge having been neither the borrower nor the user of the money lent to, and used by Claiborne, but a surety only, ought not in Equity to be further or otherwise bound than he was bound by the contract at Law; and no fraud or mistake appearing to have occurred in the writing of the bond, it is to be consider - ed as a joint obligation, and subject to the legal con - sequence of Minge and his representatives being discharged by the death of him in the life time of Claiborne, and that the said decree is erroneous.”
Decree reversed with costs, and the bill dismissed.([1])

(1) Chandler's ex. v. Neale's ex. 2 Hen. & Munf. 124.